UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————x

ARLINGTON CENTRAL SCHOOL
DISTRICT,

      Plaintiff,

  -against-                                      04 Civ. 610 (CM)(LMS)

L.P., by her parents, MR. & MRS. J.H.,

      Defendants.

————————————————————x

### DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT

McMahon, J.:

In this proceeding brought pursuant to the Individuals with Disabilities in Education Act (IDEA), plaintiff Arlington Central School District seeks an order overturning the determination of the State Review Officer (SRO) that defendant parents are entitled to tuition reimbursement for their daughter's senior year in high school. During that year, L.P. attended Kildonan School, a private school in Amenia, New York that is not on the New York State list of approved schools for the provision of special education services. The SRO concluded that the parents were entitled to tuition reimbursement for two reasons: (1) Kildonan was L.P.'s pendency placement for the 2001-02 school year; and (2) the Individualized Education Plan (IEP) prepared by the District's Committee on Special Education (CSE) for L.P.'s senior year in high school was not reasonably calculated to provide L.P. with a free appropriate public education within the meaning of IDEA.

The defendant parents of L.P. assert that there is no need to reach the second ground; if

the SRO was correct about L.P.'s pendency placement, then the parents are entitled to tuition reimbursement. I agree.

I also agree that Kildonan was L.P.'s pendency placement. The SRO did no more than apply well-settled principles of IDEA jurisprudence to the child's situation. The District has concocted an argument for why those principles ought not be applied here, but cites absolutely no legal authority for their position – because there is none.

The decision of the SRO is affirmed.

**Relevant Principles of IDEA Jurisprudence**

In this lawsuit, the plaintiff (Arlington Central School District), like any plaintiff, bears the burden of demonstrating by a preponderance of the evidence that the decision of the SRO was erroneous.

*Scope of Review and Administrative Deference*

The SRO's decision is subject to independent judicial review; a federal court may not simply "rubber stamp" an administrative determination. However, as the United States Supreme Court has cautioned, this fact "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities..." Bd. of Educ. v. Rowley, 458 U.S. 176, 206, 102 S. Ct. 3034 (1982). Federal courts must give "due weight" to the results of administrative proceedings, mindful that judges lack the specialized knowledge and experience required to resolve persistent and difficult questions of educational policy. Walczak v. Fla. Union Free Sch. Dist.,142 F.3d 119, 129 (2d Cir. 2001).

At least as to the issue of pendency, however, the SRO did no more than apply settled principles of law. A court accords no particular deference to an SRO on pure questions of law. Deference is appropriate, however, where the state hearing officers make factual determinations and have been thorough and careful in so doing. Id.

*Tuition Reimbursement*

A board of education may be required to pay for educational services obtained for a student by his or her parent, if (i) the services offered by the board of education were inadequate or inappropriate, (ii) the services selected by the parent were appropriate, and (iii) equitable considerations support the parents' claim. Burlington Sch. Comm. v. Dep't of Educ., 471 U.S. 359 (1985). Traditionally, the district bore the burden of proof on the first issue; the parents have the burden of proof on the others. M.S. v. Bd. of Educ. of the City Sch. Dist. of Yonkers, 231 F.3d 96, 102, 104 (2d Cir. 2000). However, the United States Supreme Court has now ruled that the party who requests an impartial hearing bears the burden of proving that the services offered by the Board were inadequate. Schaffer v. Weast, - - U.S. - - , 126 S. Ct. 528, 537 (2005). In this case, the parents requested both impartial hearings.[1]

*Pendency*

The pendency provisions of IDEA and the New York State Education Law add a wrinkle to the usual rules concerning tuition reimbursement. These regulations require that a student

---

[1] The first impartial hearing covered the school years 1999-2000 and 2000-2001. The second hearing covered 2001-2002.

remain in his or her "then current" educational placement, unless the student's parents and the board of education otherwise agree, during the pendency of any proceedings relating to the identification, evaluation or placement of the student. 20 U.S.C. § 1415(j); 34 C.F.R. 300.514; N.Y. Education L. § 4404(4). Pendency has the effect of an automatic injunction, which is imposed without regard to such factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships. Zvi D. v. Ambach, 694 F.2d 904 (2d Cir. 1982). The purpose of the pendency provision is to provide stability and consistency in the education of a student with a disability. Honig v. Doe, 484 U.S. 305 (1987).

Under IDEA, the pendency inquiry focuses on identifying the student's then current educational placement. Zvi D., 694 F.2d at 906. Although not defined by statute, the phrase "then current placement" has been found to mean the last agreed upon placement at the moment when the due process proceeding is commenced. Murphy v. Arlington Cent. Bd. of Educ., 86 F. Supp. 2d 354, 359 (S.D.N.Y. 2000), *aff'd* 297 F.3d 195 (2002). In most cases, the pendency placement will be the last unchallenged IEP. However, any pendency so created will be superceded (1) if there is an agreement between the parties on placement during the course of a proceeding, whether or not it is reduced to a new IEP, Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz, 137 F. Supp. 2d 83 (N.D.N.Y.2001), *aff'd*, 290 F. 3d 476, 484 (2d Cir. 2002), *cert denied*, 123 S. Ct. 1284 (2003); or (2) if an SRO reaches a decision that a child who has been unilaterally placed by her parents in a private school is entitled to tuition reimbursement. Murphy, 86 F. Supp. 2d at 360. An agreement in which a board of education agrees to pay tuition to a private school makes that school the child's pendency placement unless the stipulation is explicitly limited to a specific school year or definite time period. Zvi D., 694 F.2d

at 908.

Once a pendency placement has been established, it can only be changed in one of four ways: (1) by an agreement of the parties; (2) by an *unappealed* decision of an IHO; (3) by a decision of a state review officer that agrees with the child's parents, 34 C.F.R. § 300.514(c); 8 N.Y.C.R.R. § 200.5(l)(2)); or (4) by determination by a court on appeal from an SRO's decision. Bd. of Educ. v. Schutz, 290 F.3d at 484; Bd. of Educ. v. Engwiller, 170 F. Supp. 2d 410, 415 (S.D.N.Y.2001).

With these principles in mind, the court turns to the record.

**Statement of Relevant Facts**

Neither party has included all of the relevant facts in its statement of the case. The plaintiff District omitted everything that took place prior to the commencement of the 2001-02 CSE cycle; the defendant parents omitted to disclose key dates in connection with the issuance of the SRO's decision dealing with the issue of tuition reimbursement for the 1999-2000 and 2000-01 school years. What follows is a statement of *all* the undisputed facts that are relevant to deciding this motion:

*The Child L.P.*

L.P. was born on September 29, 1983. When she began school, the family lived in Yonkers. L.P. repeated first grade, and was first referred to the CSE by her second grade teacher in June 1993. Shortly thereafter, the family moved into the plaintiff District. L.P. was immediately referred to the CSE.

Throughout her academic career, L.P. was provided with special education services by the District. For at least some years, her learning disabilities were deemed so severe that she was removed from mainstream classrooms altogether and placed in a Special Education classroom – a remedy limited to situations where even the use of supplementary aids and services cannot help the child learn in regular classes. During her ninth grade year, which was her last year in the Arlington schools (1998-99), L.P. received failing marks in every subject, and testing performed by a neuropsychologist revealed that her skills levels fell into the lowest percentile range.

Nonetheless, the CSE recommended an IEP for L.P.'s tenth grade year (1999-2000) that included 7.5 periods of Resource Room weekly, Special Class (15:1 teacher-pupil ratio) for three periods daily, and one monthly counseling session. The parents objected and unilaterally placed their daughter at Kildonan, which has a highly specialized instructional program using the multisensory Orton-Gillingham method. Kildonan offers intensive instruction in the most restrictive educational environment (private school, daily 1:1 instruction).

The parents demanded an impartial hearing on June 12, 2000, which was at the end of L.P.'s first year at Kildonan. The parties agreed to adjourn the hearing to permit IEP development for the 200-01 school year. They agreed to consolidate hearings for both years if the parties could not agree on a placement for L.P. for her junior year.

Needless to say, the parties did not reach an agreement. The District developed an eleventh grade IEP that called for a combination of regular education (including regular classes in English and Science), together with resource room and self-contained programming, and

remedial reading and writing every other day. The IEP also called for counseling once a month to help the child transition from her residential program at Kildonan. The parents objected, re-enrolled L.P. at Kildonan, and demanded an impartial hearing for the 2000-01 school year as well.

At the time both of these administrative proceedings began, L.P.'s pendency placement, as a matter of law, was Arlington High School, in accordance with her ninth grade IEP, the last agreed-upon IEP.

L.P. stopped attending Kildonan as a residential student in December 2001. She left the school entirely in March 2002. The record contains conflicting evidence as to whether she dropped out or left the school on a medical leave.

In the same month that she stopped attending school altogether, L.P. had another neuropsychological evaluation. As a result, we have a clear picture of where she was when her formal education ended. The test indicated that the girl was performing at fifth grade level in reading comprehension, third grade level in math with untimed testing and sixth grade level in written expression. She had not passed any Regents exam – indeed, she had already failed her math regents competency test twice – or any Regents Competency (RCT) equivalent, which was a prerequisite for receiving a high school diploma. Additionally, she was short 20.5 credits from being able to graduate from Arlington High School.

*The Administrative Decisions in the First Impartial Hearing*

On or about June 8, 2001, the IHO issued his decision in the consolidated proceeding challenging L.P.'s IEP for her sophomore and junior years. The IHO concluded that the parents

were entitled to reimbursement for both years, because the IEP was deficient in numerous ways. He also concluded that the parents had appropriately placed their daughter at Kildonan. However, the IHO reduced the tuition reimbursement for the 1999-2000 school year by two-thirds, on the ground that the parents had failed to cooperate with the CSE. He reduced the tuition reimbursement for 2000-01 by one-third for the same reason (which he denominated "unreasonableness"). And he denied the cost of residential placement at Kildonan for both years.

As a matter of law, an IHO decision creates a pendency placement only if it is not appealed. Here, both the District and the parents took an appeal from whatever aspects of the IHO's decision aggrieved them on or about July 12, 2001. Therefore, as a matter of law, the IHO's decision did not change L.P.'s pendency from Arlington to Kildonan

The SRO's decision on the two consolidated complaints vindicated the parents' position completely. See Decision No. 01-054 (May 21, 2002). The SRO (placing the burden of proof on the District, as was the law at the time of the decision) found the 1999-2000 IEP to be both procedurally defective and substantively inappropriate, in that it failed to address Lauren's situation in an adequate manner. The SRO also concluded that the parents' placement of L.P. in Kildonan as a day student was appropriate and met IDEA's goal of providing her with an education in the least restrictive environment. The SRO even reversed the IHO's determination that the parents had not cooperated with the CSE in the development of their daughter's IEP and overturned the financial penalty he had imposed on equitable grounds.

The SRO also concluded that the 2000-01 IEP prepared by the District was inappropriate and that the placement in Kildonan was appropriate. He awarded full tuition

reimbursement for that year, including reimbursement for L.P.'s placement in the residential program, rather than just the day school.

The District did not appeal the SRO's decision and it reimbursed the parents' for two years tuition at Kildonan.

As a matter of law, the SRO's decision changed L.P.'s pendency from Arlington to Kildonan.

*The 2001-02 IEP and the Second Administrative Proceeding*

In a decision dated August 15, 2002, the IHO concluded that the SRO's May 21, 2002 decision created a pendency placement for L.P. at Kildonan for the appeal concerning the child's IEP for the 2001-02 school year (even though the decision was not issued until the end of that school year). Because Kildonan was L.P.'s pendency placement, the IHO ruled that the parents were entitled to reimbursement for the cost of tuition at Kildonan. The IHO further concluded that the 2001-02 IEP was inadequate in that it provided fewer services than were proposed for the prior school year, which services had been found inadequate by both the IHO and the SRO in the prior decision. The IHO also concluded, in cursory fashion, that the parents had properly placed their daughter at Kildonan. He was unable to make a finding about whether L.P. had dropped out of Kildonan or left the school on medical leave, but that did not affect his analysis; he ordered tuition reimbursement at residential rates for the entire school year.

The District took an appeal, and the SRO concluded that the parents were entitled to more limited reimbursement: at residential rates until December 2001, and at day student rates

thereafter until such time as the child dropped out of school. The determinations obviously reflected the fact that L.P. was not receiving residential services after December 2001 and was not receiving services at all after March 2002.

The SRO's determination rested entirely on pendency. He ruled, "When respondents formally requested the hearing in this proceeding on August 20, 2001, their child's pendency placement pursuant to my decision in Application of a Child with a Disability, Appeal No. 01-054, dated May 21, 2002, was Kildonan. There has been no change in placement via an agreement of the parties, an unappealed determination by a hearing officers, a decision by the State Review Officer, or a determination of a court. Therefore, respondents' daughter's "then current placement" at the initiation of these proceedings, was and still is Kildonan." To support this seemingly illogical proposition (since the SRO's decision changing the pendency was still nine months in the future when the instant proceeding began), the SRO cited Murphy v. Arlington Cent. Sch. Dist., 297 F.3d 195 (2d Cir. 2000).

Although he granted reimbursement on pendency grounds, the SRO conducted an extensive analysis of the IEP's adequacy. He found it flawed in several respects: it failed to provide for instruction in mathematics, although L.P. still needed to pass a math RCT to graduate; its recommendation that she use Resource Room time to work on math was insufficient to prepare the girl to take a test she had already failed twice; and it failed to provide sufficient counseling given the child's need for "strong psychological support."

However, the SRO concluded that the parents had not met their burden of showing that Kildonan provided their daughter with an appropriate education for her senior year in high school. In so finding, the SRO relied on data about L.P.'s actual performance during the 2001-

-10-

02 school year, which was (admittedly) dismal, and ended with the girl's leaving school altogether. Specifically, the SRO noted that Kildonan was deficient in exactly the same ways the district's IEP was deficient; the school did not provide L.P. with any counseling (including when she was supposedly on leave due to clinical depression and anxiety) and did not have her in a math class.

The District appeals. It argues that Kildonan was not L.P.'s pendency placement at the commencement of the administrative proceeding, and urges the adequacy of her 2001-02 IEP.

**Conclusion of Law**

The SRO's determination is affirmed.

As far as this court is concerned, the only issue that requires extensive discussion is the pendency issue. The record clearly supports the SRO's well-reasoned factual determination that both the IEP and Kildonan were inadequate for L.P.'s needs during the 2001-02 school year, and there is no need for me to restate the SRO's conclusions in that regard.[2] Therefore, unless Kildonan was L.P.'s pendency placement, there can be no tuition reimbursement.

To support the specific conclusion that Kildonan was L.P.'s pendency placement during the 2001-02 school year, and that the parents were thus entitled to pendency reimbursement for the entire school year, the SRO invoked, inter alia, the rule of Murphy v. Arlington Cent. Sch. Dist., 297 F.3d 195 (2d Cir. 2002). Unfortunately, the SRO's citation to

---

[2] Although I do not intend to enter into an extended discussion of this issue, I must observe that the IEP tendered by the District appears to have been shockingly inadequate for this child's needs. I can only conclude that the District simply gave up on this very difficult girl, who had already consumed so many of its resources, when it seemed likely that she would never graduate from high school.

this decision is misleading. Murphy, read literally, holds only that, if a pendency changes during the course of an administrative proceeding, the parents are entitled to tuition reimbursement *from and after the date of the SRO's decision* – not from the beginning of the school year in which the SRO's decision came down.

The decision the SRO should have cited for the proposition that the parents are entitled to pendency reimbursement for the period when L.P. was in school during the relevant school year is the District Court's decision in Murphy v. Arlington Cent. Sch. Dist., 86 F. Supp. 2d 354 (S.D.N.Y. 2000), a decision I will refer to as "Murphy I."[3] In Murphy I, the parents challenged their son's IEP for the 1998-99 school year. They brought that challenge on September 3, 1998. The SRO's determination that the parents were entitled to Kildonan tuition reimbursement for the 1998-99 school year was handed down on December 13, 1999. The district court (in the person of Judge Haight) allowed tuition reimbursement for Kildonan as a pendency placement from and after December 3, 1999 – the date the SRO handed down his decision. But he also allowed the parents, on equitable grounds, to receive reimbursement for Kildonan tuition for a three month period after the SRO should have handed down his decision (from and after September 17, 1999). The district court noted that the parents had done nothing to contribute to the delay and had not consented to it.

The Second Circuit affirmed Judge Haight's ruling in its entirety, but did not discuss the portion that awarded equitable reimbursement for the period September 17 to December 3, 1999. Indeed, by using the language it employed, the Circuit suggested that the rule was otherwise.

---

[3]The SRO cited the District Court case, but not for this particular proposition.

-12-

However, Judge Haight's conclusion about equitable reimbursement was cited approvingly by the Second Circuit in a more recent Arlington Central School District case, Mackey v. Arlington Cent. Sch. Dist., 386 F.3d 158 (2004) – a case with which I have a more than passing familiarity. In Mackey, this court had applied the Second Circuit's literal language from Murphy to hold that tuition reimbursement could not begin until the date the SRO issued his decision. Because the SRO's pendency-changing decision in Mackey came after a child had finished the school year, I concluded that the parents' request for tuition reimbursement on pendency grounds was moot. The Second Circuit reversed. While acknowledging that its decision in Murphy seemed to make the date of the SRO's decision the *only* relevant date for pendency reimbursement purposes, the Mackey panel expressly endorsed Judge Haight's adoption of equitable pendency reimbursement for any period when an SRO's decision was unduly delayed through no fault of the parents. This had the effect of making Judge Haight's decision on the point the law in this Circuit.

In Mackey, the Court of Appeals directed this court to select a date by which the SRO should have issued his decision creating a new pendency, and ordered that the parents be reimbursed for tuition from and after that date. On remand, I adopted Judge Haight's approach and selected the date on which the SRO should have issued his decision as a matter of law – 30 days after the appealing party submitted its request for review.

Therefore, in a case like this one, where an unduly delayed SRO decision in a prior proceeding results in a change in pendency, the parents *are* entitled to pendency tuition reimbursement from and after the date of the SRO's decision, and *may be* equitably entitled to reimbursement from and after the date when the SRO should have entered his decision. There

is no requirement, as the plaintiff District suggests (without citing any legal support, because there is none), that the parents first bring a court proceeding for pendency reimbursement (as the parents did in Murphy), or that they raise the issue of pendency tuition reimbursement at any particular point in the proceedings, in order to be so entitled. Burlington fully entitles the parents to retroactive reimbursement if their position is upheld – as it was by the SRO in this case. And at least after Mackey, in cases like this one, where the SRO's decision is unduly delayed, the pendency issue does not become moot because the SRO's decision came down after L.P. left school.[4]

As with any entitlement that arises in equity, however, if the evidence demonstrates that the parents caused or contributed to the delay, a court could find that they are wholly or partly disentitled to pendency reimbursement. In making such a determination, the relevant facts are three: (1) the date the SRO rendered his pendency-changing decision; (2) the date the SRO should have rendered his pendency-changing decision; and (3) any information about why the SRO's decision was delayed – particularly information suggesting that the parents who are seeking reimbursement were responsible for the delay, and so are not equitably entitled to Murphy I/Mackey reimbursement.

I have reviewed a copy of the SRO's decision No. 01-054, the first administrative proceeding. As noted above, both parties appealed from that decision. It appears that the original appeal from the IHO's decision was filed by the parents, who timely served their petition on July 12, 2001. The regulation required the SRO to hand down his decision thirty

---

[4] To be completely fair to the district's counsel, Mackey did not come down from the Second Circuit until after summary judgment papers were filed in this case.

-14-

days after that date, or by August 11, 2001 – well before the start of the 2001-02 school year. So I conclude that the parents are presumptively entitled to <u>Murphy I/Mackey</u> reimbursement from the commencement of the 2001-02 school year. That, of course, is consistent with the decision of the SRO.

The only question left for me to determine is whether the parents are disentitled, because of their own (or, more specifically, their attorney's) conduct, to some portion of that pendency reimbursement. The answer is clearly no.

If the SRO had complied with the regulation, he would have handed down a decision without receiving any response to the petition from the District. The answer to the parents' petition and the cross appeal were not filed by the District until September 26, 2001. This filing was obviously untimely. The relevant regulation called for an answer 10 days after service of the petition on the district clerk, 8 N.Y.C.R.R. § 297.5, and the SRO's should have issued his decision well before the answer and cross appeal were ever served.

The SRO concluded that the district's untimeliness (which it excused in the interests of justice) was caused by two factors. First, while the parents correctly served the petition on the District by delivering a copy of the petition to the district clerk (<u>see</u> 8 N.Y.C.R.R. § 275.8), the district clerk failed to forward the petition to counsel, relying (erroneously) on a statement at the end of the petition which suggested that counsel had also been served. As a result, counsel were not sent a copy of the petition on appeal by the district clerk until July 26.[5] Second, while

---

[5] I asked for and received a fuller explanation from the district's counsel about how these events transpired. I note that the district's counsel apparently did not need to receive the petition to learn of the appeal, but rather learned of the appeal "through our independent investigation." (Letter of Jeffrey J. Schiro to the court, dated March 13, 2006). In any event, the district's time to answer the petition dates from the date of service on the district clerk. Even allowing for the

-15-

preparing the answer and cross-appeal, counsel for the district had a baby.

Obviously, the parents and their counsel did nothing to contribute to the district's inordinate delay in responding to the petition. As set forth in the accompanying footnote, the district's response – even allowing for the district clerk's understandable laxity in sending the petition on to counsel – was due at the latest by August 5. It was not filed until six weeks later. Defendants cannot be taxed with that extra time. And there is no suggestion that the parents either consented to or in any way contributed to the extraordinary amount of time (eight months) that it took the SRO to reach his decision.

In short, the parents did nothing that should cause me to delay the start date of their equitable right to <u>Murphy I/Mackey</u> reimbursement. I thus conclude that they are entitled to reimbursement in an appropriate amount from the beginning of the 2001-02 school year – notwithstanding the fact that the SRO did not hand down his pendency-changing decision until May 21, 2002.

Insofar as the SRO modified the IHO's determination concerning the amount of tuition reimbursement, I conclude he was correct, for the reasons stated in his opinion and summarized above.

---

failure of both Ms. Charpentier and the district clerk to serve counsel directly, the answer should have been served at the latest by ten days after July 26, or by August 5.

## Conclusion

The SRO's determination is in all respects affirmed. The District's motion for summary judgment is denied and the parents' cross-motion for summary judgment dismissing the complaint is granted.

Counsel for the parents should submit a motion for attorneys' fees within ten days of the date of this decision. If the parties are able to come to an agreement about attorneys' fees, please submit a consent judgment.

Dated: March 14, 2006

_____
U.S.D.J.

BY FAX TO:

    Rosalee Charpentier, Esq.
    Jeffrey Schiro, Esq.